Argued and submitted June 27, 2012, reversed and remanded August 14, 2013, petition for review allowed January 16, 2014 (354 Or 699)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**SHAWN GARY WILLIAMS,**
*Defendant-Appellant.*

Josephine County Circuit Court
08CR0707; A145644

308 P3d 330

Mary M. Reese, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant was convicted after a jury trial of two counts of first-degree sexual abuse, ORS 163.427, for his conduct involving a five-year-old girl. The state was required to prove that defendant touched or attempted to touch the child's sexual or other intimate parts "for the purpose of arousing or gratifying the sexual desire of" either party. ORS 163.427(1)(b); ORS 163.305(6) (defining sexual contact). On appeal, defendant advances four assignments of error. He contends that the trial court erred in (1) admitting evidence that he possessed two pairs of little girls underwear as relevant to his specific, sexual intent, (2) allowing the prosecution to play a recording of his interview by a detective, during which the detective repeatedly commented on his credibility, and concluding that a curative instruction was sufficient to address those comments, (3) denying defendant's motion for a mistrial based on the detective's comments on his credibility, and (4) allowing a nonunanimous jury verdict. We do not reach his second through fourth assignments because, as to the first assignment of error, we conclude that the trial court erred, and we reverse and remand for a new trial.

### FACTS

Defendant met the child's mother one Saturday night at a bar. They spent most of the night together at the mother's apartment and planned a rafting trip for the next day. The next day, defendant met the child and her mother to go shopping for supplies for the trip. At the store, defendant picked up the child and placed her over his shoulders, and she rode on his shoulders while they shopped. That evening, after their outing, they returned to the mother and child's apartment. At the apartment, the child's mother went outside to the patio area to smoke while defendant and the child were wrestling on the couch. Mother came back inside and wanted to take a shower, and defendant volunteered to watch the child. When the child's mother left the room, she observed defendant sitting on the couch and the child sitting on the floor in front of the couch. Mother showered for approximately 10 minutes and rejoined the two on the couch.

After another date with defendant, the child's mother asked the child what she thought of defendant. In response, the child said, "I don't know about him, mommy," and, when her mother asked the child to elaborate, she replied, "Mommy, the other day when you were in the shower, he tickled my potty and made me touch his." Her mother asked whether defendant "tickled" the child over her underwear, and the child put her hand inside her underwear and wiggled her fingers, saying "he did this."

The child's mother called the police, and Grants Pass Detective Pierce interviewed the child. During the interview, the child identified defendant as the person who had touched her. The child told Pierce that the touching occurred when her mother was in the shower and also once before the rafting trip. After conducting the initial interview of defendant, Pierce contacted Detective Lidey to assist her with the investigation.

Eventually, after Lidey had interrogated defendant twice, defendant was charged with two counts of sexual abuse in the first degree based on events after the rafting trip. In Count 1, the state alleged that defendant had had sexual contact with the child by touching her vagina, and the state alleged in Count 2 that he had caused the child to touch his penis.

Pierce's interview of defendant was recorded, and the state played the recording for the jury. Pierce told defendant that the child had made an "accusation" of "some kind of touching," and defendant denied ever being alone with the child. When Pierce told defendant that the allegation occurred while the child's mother was in the shower, defendant replied that he was only alone with the child for 10 minutes and explained that, during that time, the child was sitting on the floor watching a movie and he was lying on the couch. Pierce asked if the child had ever lain on him while he was on the couch, and he said no. He stated that he had never seen the child naked and repeatedly denied touching the child's private area. Defendant explained that he may have touched the child's private area inadvertently once when he picked her up and carried her on his shoulders while they were shopping for supplies for the rafting trip.

Although both of Lidey's interrogations of defendant were recorded, the state played only the audio recording of Lidey's first interrogation, which was approximately 45 minutes long, for the jury. During that interrogation, defendant admitted that he and the child wrestled, but stated, "I did not touch her anywhere intentionally, or that I hadn't touched her at all that I'm aware of. But in the course of wrestling * * * I could grab anywhere, and just to throw her off or throw her in, something like that." Lidey asked whether defendant accidentally touched the child's vagina, and defendant said no. During Lidey's second interrogation of defendant, defendant had said that, when the child was lying on top of him on the couch, his hands "could have landed in her crotch area" while he was napping.

The child testified at trial. She described defendant using his fingers to touch her vagina underneath her underwear and grabbing her hand and putting her hand, over his clothing, on his "front private" area.

The state also presented testimony from defendant's landlord, the owner of a small cabin, over defendant's objection. The landlord testified that she had rented the cabin to defendant for approximately five or six months. Before defendant moved in, she had cleaned the cabin, including moving around the mattress on the bed in the bedroom. There were no girls underwear in the cabin at that time. When the landlord evicted defendant and cleaned the cabin, it still contained some of defendant's belongings. She discovered little girls underwear in his duffel bag and a second pair in between the mattresses on the bed where, she testified, no child could have placed it. The court admitted the two pairs of underwear that the landlord found in defendant's cabin into evidence.

Before trial, defense counsel sought to exclude the landlord's testimony, arguing that its sole purpose was to prejudice the jury against defendant by suggesting that he has "a problem with little girls." The trial court deferred ruling until trial. At trial, defendant argued that there was insufficient evidence to support a finding that he possessed the underwear; the underwear was in any event irrelevant, because it did not support an inference that a single man

who possesses girls underwear is sexually attracted to little girls; and its admission was unfairly prejudicial under OEC 403. The state argued that the evidence was relevant to show that defendant touched the child with a sexual purpose by placing his hand inside her underwear. The state reasoned that the evidence was relevant to rebut defendant's explanation that he may have touched the child accidentally when they were wrestling or when he was asleep on the couch.

After hearing the state's offer of proof and the parties' arguments, the trial court determined that there was sufficient evidence to support a finding that defendant possessed the underwear, that defendant's intent was a key issue for the state at trial, and that the evidence was relevant to the issue of whether "any touching that occurred in this case was with sexual intent." The court also determined that the prejudicial impact of the evidence did not outweigh its probative value and overruled defendant's objections.

Defendant also testified at trial. He acknowledged that his arm and his neck had contact with the child's crotch while he was lifting her and carrying her around the store on his shoulders, but he denied touching the child inappropriately. He said that, after the rafting trip, while the child's mother was smoking on the patio, he and the child, alone in the apartment, began wrestling on the couch. The child was wearing a "miniskirt." After a few minutes, defendant felt tired, stopped playing with the child, and lay on the couch. The child then had lain on top of defendant with her back on his chest and her hips on his hips, and defendant put his arms around her chest. While the child's mother came back inside and took a shower, the child was on the floor watching a movie.

Ultimately, the jury found defendant guilty on both counts of first-degree sexual abuse.

## ANALYSIS

We begin with defendant's first contention—that is, that the trial court erred in admitting testimony that he possessed two pairs of little girls underwear as relevant to the issue of whether "any touching that occurred in this case

was with sexual intent." Defendant argues that the state offered the "other act" evidence regarding his possession of the underwear to establish that he was a pedophile, which was inadmissible character evidence, OEC 404(3), and not for a legitimate noncharacter purpose. Defendant also contends that the evidence, if at all relevant, should have been excluded under OEC 403. The state responds that its evidence of defendant's possession of little girls underwear was relevant for a noncharacter purpose and, therefore, OEC 404(3) is inapplicable. Specifically, the state argues that defendant's possession of little girls underwear was relevant to defendant's specific intent—whether he had a sexual intent in touching the child—and that the issue should be analyzed under the relevance grounds in OEC 401. We therefore begin our analysis by addressing how OEC 401 and OEC 404(3) may apply to this case.

Under OEC 401, evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We have explained that the "proper inquiry in determining a question of logical relevance is whether the item of evidence even slightly increase[s] or decrease[s] the probability of the existence of any material fact in issue[.]" *State v. Millar*, 127 Or App 76, 80, 871 P2d 482 (1994) (internal quotation marks omitted; brackets in *Millar*).

Under OEC 404(3),

"[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Thus, OEC 404(3), by its terms, does not prohibit admission of evidence of other acts by the defendant if those acts are "admissible for other purposes," such as proof of intent.

The Supreme Court has explained the interplay between those two rules. In *State v. Johnson*, 340 Or 319, 338, 131 P3d 173, *cert den*, 549 US 1079 (2006), the court

noted that evidence of the defendant's other acts may be admitted so long as (1) the evidence is logically relevant to an issue in the case and (2) the logical relevance of the evidence does not depend on "an inference relating to the defendant's character or propensities." In other words, as we recently stated, *Johnson* teaches that, if "a reasonable trier of fact could also draw from the evidence a rational inference that does not rely on the defendant's character or propensity to do evil, then the evidence is properly admissible." *State v. Momeni*, 234 Or App 193, 201, 227 P3d 1230, *rev den*, 348 Or 523 (2010). The burden is "on the party offering the evidence to show that the proffered evidence is relevant and probative of something other than a disposition to do evil." *State v. Pratt*, 309 Or 205, 210, 785 P2d 350 (1990).

More recently, and after the briefing in this appeal was completed, the Supreme Court has cautioned that, even if evidence of the defendant's other acts are relevant to an issue in the case, such as the defendant's intent, a trial court must also take steps to ensure that the evidence is properly limited to the purpose that the "other acts" evidence serves. In *State v. Leistiko*, 352 Or 172, 185, 282 P3d 857 (2012), the Supreme Court explained that a trial court must ensure at least one of two conditions is satisfied before admitting evidence of other crimes or acts to prove the defendant's intent or some other mental state: (1) the defendant has conceded the charged act that requires proof of a concomitant mental state, or (2) the jury is instructed not to consider the evidence of the required mental state unless it finds that the defendant committed the charged act. And, as the Supreme Court further explained in *State v. Pitt*, 352 Or 566, 579, 293 P3d 1002 (2012), a court cannot give the limiting instruction to the jury unless the state has "first introduce[d] evidence sufficient to allow the jury to find that the charged act occurred."

We first determine whether the state's evidence of defendant's possession of little girls underwear is logically relevant to a contested issue in the case. As earlier noted, the state contends that the evidence was relevant to prove an element of the crime, namely, that defendant acted with the requisite sexual intent. Defendant disputes that

contention. We review questions of relevance for legal error. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

Intent is not always a contested issue in a case simply because the state must prove every element of the charge, including intent, when the defendant enters a not guilty plea. *See Pitt*, 352 Or at 580 (rejecting the state's argument that the "defendant's not guilty plea alone was sufficient to make the evidence of uncharged misconduct relevant"). Defendant argues that his specific intent was not truly a contested issue because, if the jury believed that he had both touched the child's vagina under her clothing and forced her to touch his clothed penis, then it would be out of the question that those acts were an accident of some sort; in other words, those acts by themselves establish that he had a sexual purpose. According to defendant, the evidence was irrelevant and inadmissible. *See State v. Osborne*, 174 Or App 88, 92, 25 P3d 356 (2001) (concluding that, when the only contested issue at trial is whether the events that the victim described had actually occurred, then evidence of prior acts to establish intent are inadmissible). The state argues that, because the jury heard interviews in which defendant told the police that any physical contact he had had with the child was innocent or accidental, it had to put on evidence that defendant had the intent to touch the child "for the purpose of arousing or gratifying the sexual desire of" either party. *See* ORS 163.427(1)(b) (defining sexual abuse in the first degree as intentionally touching or contacting the intimate body part "for the purpose of arousing or gratifying the sexual desire of a person"); ORS 163.305(6) (defining "sexual contact" as contact with a sexual or intimate body part "for the purpose of arousing or gratifying the sexual desire of either party").

We conclude that defendant has the better argument. Defendant was charged with having sexual contact with the child by touching her vagina and by making the child touch his penis. At trial, the child's testimony and the state's theory of the case were that, while the child's mother was in the shower, defendant committed the charged crimes by putting his hand in the child's underwear and touching her vagina and also taking and placing the child's hand on his clothed penis. The jury did hear defendant's out-of-court

statements suggesting at some points that some part of his body may have contacted the child innocently or inadvertently. For example, during Lidey's first interrogation of defendant, defendant had said that he was wrestling with the child at the apartment and may have inadvertently touched the child's private parts, and, during Lidey's second interview of defendant, defendant had said that, when the child was lying on top of him while her mother was in the shower, his hands "could have landed in her crotch area" while he was napping. But in none of those statements did defendant suggest that he may have put his hand in the child's underwear or caused the child to touch his penis, accidentally or not; rather, he denied doing so. If defendant had committed the acts relied on at trial—that is, placing his hand in the child's underwear and touching her vagina and taking her hand and placing it on his clothed penis—whether he did so with the purpose of sexual gratification or arousal was not truly at issue in this case; they strongly indicate a sexual purpose. *See State v. Sicks*, 33 Or App 435, 438, 576 P2d 834 (1978) ("Where the charged acts, if proven, would by themselves strongly indicate the required state of mind, evidence of other similar acts should generally be admitted only if defendant concedes the alleged act but claims that it was inadvertent or innocent.").[1] Accordingly, the trial court erred in admitting the state's evidence of defendant's possession of little girls underwear.[2]

---

[1] This case is thus unlike *Millar*, on which the state relies. In that case, the state charged the defendant with sexually abusing a child by placing his hand inside the front of her pants. 127 Or App at 78. The defendant in that case admitted the act but denied specific intent. He said that he put his hand in the child's pants but only to retrieve a toy the child had placed there and not for a sexual purpose. *Id*. at 80. The state proffered evidence that the defendant possessed a pornographic magazine containing photos of young teenage girls exhibiting their genitalia to prove that the defendant had a heightened sexual interest in the "genital area of teenage girls." *Id*. at 81. We concluded that a jury could infer from the defendant's possession of the pornographic magazine that he intended to touch the victim's genital area for a sexual purpose. *Id*. at 80-81. Nor is this a case like *State v. Hutton*, 250 Or App 105, 279 P3d 240 (2012), *vac'd and rem'd*, 353 Or 533, 300 P3d 1222 (2013), in which we explained that there are circumstances in which intent might be at issue despite a defendant's denial that the charged act occurred.

[2] We note that the two conditional requirements articulated in *Leistiko* and *Pitt* arguably do not apply in this case given their rationale. In *Leistiko*, the state argued that evidence of the defendant's uncharged misconduct was relevant to prove his intent because the uncharged and charged conduct was sufficiently similar such that it was unlikely to occur accidentally, thereby invoking the doctrine of chances. 352 Or at 182; *see Pitt*, 352 Or at 570 (noting that the state proffered

We turn to whether the error requires reversal and remand for a new trial. The state argues that, even if the trial court erroneously admitted the evidence, the error was harmless. We disagree.

An evidentiary error is reversible only it if is prejudicial. *State v. Dimmick*, 248 Or App 167, 176, 273 P3d 212 (2012); *see also* OEC 103(1) ("Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). If evidence that was erroneously admitted relates to a central issue in the case, then it is more likely that that error substantially affected the verdict. *See State v. Marrington*, 335 Or 555, 566, 73 P3d 911 (2003) (concluding that the error could have affected the court's verdict because the evidence related to a central factual issue in the case).

The state contends that the evidence of defendant's possession of little girls underwear was harmless in light of the child's candid, consistent responses to questioning and, in contrast, defendant's inconsistencies in his statements in police interviews and his trial testimony. Essentially, the

evidence of the defendant's prior uncharged misconduct to prove absence of mistake or accident). Relying on *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), and John Henry Wigmore, 2 *Evidence* § 302, 245 (Chadbourne rev 1979), for support, the Supreme Court explained that the doctrine of chances rests on the proposition that *the charged acts have occurred*. *Leistiko*, 352 Or at 185. The court noted that, unless either of the two preliminary conditions is met (the defendant has conceded the charged acts or the jury is instructed not to consider the evidence unless it finds that the defendant has committed the charged acts), admitting evidence of a defendant's uncharged misconduct to prove intent creates "an unacceptable risk that the uncharged misconduct is being admitted to prove the act, not the defendant's mental state." *Id.* at 186. In this case, however, the state's evidence that defendant possessed little girls underwear does not invoke the application of the doctrine of chances; the evidence instead suggests that defendant has a sexual interest in little girls. (In contrast, had the state offered evidence of defendant's similar uncharged misconduct—*i.e.*, repeated instances in which he touched other young girls with a sexual purpose—to prove that defendant touched this child with a sexual purpose, that evidence would have implicated the doctrine of chances.) And, even assuming that the two additional conditions for admissibility set out in *Leistiko* and *Pitt* apply here, neither was met. Although the state introduced evidence that was sufficient to allow the jury to find that defendant had committed the charged acts before it proffered the evidence that defendant possessed little girls underwear, the trial court did not give a limiting instruction to the jury. *Cf. State v. Jones*, 258 Or App 1, 308 P3d 347 (2013) (trial court's admission of alleged "prior bad acts" evidence in jury trial, as proof of the defendant's purported culpable mental state, was "plain error" where court submitted that evidence without limiting instruction prescribed in *Leistiko*).

state suggests that we can assume that the jury concluded, based on the testimony, that defendant lacked credibility regardless of the import of his possession of the underwear. The state is correct that defendant's accounts of what occurred in the apartment after the rafting trip differed from each other in a number of respects,[3] but defendant notes that the child's account of the events was not always entirely consistent, either.[4]

The central issues the jury had to decide were whether defendant touched the child and forced her to touch him, which ultimately came down to a credibility determination. Like many sex abuse cases, this case involved a swearing contest between defendant and the child. There were no witnesses to the alleged touching or any physical evidence to corroborate the alleged abuse.

The state's evidence of defendant's possession of little girls underwear likely affected the jury's consideration of whether defendant committed the charged acts because there is a substantial possibility that, after hearing the landlord's testimony and viewing the underwear, a rational juror would conclude that defendant is sexually attracted to little girls.[5] And, without a limiting instruction, the jury in this case was free to use that inference about his character or disposition—that he is the kind of man who sexually

[3] For example, during Pierce's interview of defendant, defendant denied that the child had lain on him. During Lidey's first interview of him, defendant said that he had wrestled with the child and may have inadvertently touched her. During Lidey's second interview, he said that the child was lying on top of him while her mother was in the shower and his hands could have fallen and landed on the child's crotch area while he was napping. At trial, defendant testified to the events he described in both the first and second interviews with Lidey: he wrestled with the child, and, after he tired, he lay back on the couch with her on top of him and fell asleep. However, he repeatedly denied placing his hand in her underwear and touching her vagina; he never admitted that act or the act of taking the child's hand and causing her hand to touch his clothed penis.

[4] For example, the child told Pierce only that defendant had touched her genitals and, on cross-examination at trial, reiterated that the only thing defendant did was touch her "front private" area; at other times, including on direct and redirect examination, the child said that defendant also made her touch his genitals.

[5] The state notes that defendant offered a benign explanation for the underwear, namely, that it was simply left behind when a woman with a young daughter had been to the cabin. That testimony was offset by the landlord's testimony that she found underwear between the mattresses on the bed where no child could reach and inside defendant's duffle bag.

abuses little girls—to conclude that he acted in conformity with it by touching the child and forcing her to touch him when he was alone with her.

For those reasons, we cannot say that there is "little likelihood that the error affected the jury's verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). The trial court's admission of the evidence was not harmless, *see, e.g., Osborne*, 174 Or App at 92-93 (holding in a child sex abuse case that the trial court erred in admitting the state's evidence of the defendant's prior, similar acts of sexual misconduct with a different child, because the defendant's intent was not a contested issue in the case, and that the error was not harmless). Accordingly, we reverse and remand.

Reversed and remanded.