Submitted on remand from the Oregon Supreme Court July 30, 2015, affirmed
March 2, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*

SHAWN GARY WILLIAMS,
*Defendant-Appellant.*

Josephine County Circuit Court
08CR0707; A145644

368 P3d 459

Peter Gartlan, Chief Defender, and Mary M. Reese, Deputy Public Defender, Office of Public Defense Services, filed the opening brief for appellant. On the supplemental brief were Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Mary M. Reese, Deputy Public Defender.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the answering brief for respondent. On the supplemental brief were Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Patrick M. Ebbett, Assistant Attorney General.

Before Duncan, Presiding Judge, and DeHoog, Judge, and Schuman, Senior Judge.

DEHOOG, J.

**DEHOOG, J.**

This case comes to us on remand from the Supreme Court, *State v. Williams*, 258 Or App 106, 308 P3d 330 (2013) (*Williams I*), *rev'd*, 357 Or 1, 346 P3d 455 (2015) (*Williams II*). A jury convicted defendant of two counts of first-degree sexual abuse, ORS 163.427, for conduct involving a five-year-old child. Defendant appealed those convictions and raised multiple assignments of error. *Williams I*, 258 Or App at 107. We reversed on defendant's first assignment of error and held that the trial court erroneously admitted, under OEC 404(3), testimony that defendant had previously possessed little girls' underwear, which the state offered as evidence of defendant's sexual intent towards the child. *Id.* at 107, 111, 114. In light of that disposition, we did not reach defendant's other assignments of error. *Id.* at 107. In *Williams II*, the Supreme Court reversed our decision and concluded that the underwear evidence was admissible evidence of sexual intent under OEC 404(4), which, the court concluded, superseded OEC 404(3). 357 Or at 24. The Supreme Court remanded to us with instructions to consider defendant's three remaining assignments of error. *Id.*

Defendant's combined second and third assignments of error contend that the trial court erred, first, by allowing the state to play an audiotaped interview of defendant, in which the investigating detective repeatedly commented on defendant's credibility, and, second, by subsequently denying defendant's motion for mistrial, in light of the highly prejudicial nature of that recording. In his fourth assignment of error, defendant argues that the trial court erred in accepting the jury's verdict, after instructing the jury that it could render a verdict based upon a nonunanimous vote of its members. On defendant's second and third assignments of error, we conclude that the trial court did not commit reversible error, in light of the trial court's specific instruction that the jury ignore the detective's comments about defendant's credibility. As for defendant's fourth assignment of error, we have previously rejected challenges to nonunanimous jury verdicts. *E.g., State v. Cobb*, 224 Or App 594, 596-97, 198 P3d 978 (2008), *rev den*, 346 Or 364 (2009). For the reasons stated in *Cobb* and numerous other

decisions, we again reject that challenge without further discussion. Accordingly, we affirm.

We fully described the facts underlying defendant's convictions in our previous decision, *Williams I*, 258 Or App at 107-10, and do not repeat them in detail here. However, to place our discussion in context, we provide aspects of that factual background, as well as pertinent details of the ensuing investigation and subsequent procedural history. In brief, the conduct that gave rise to defendant's charges—including allegations that he touched the bare vagina of a five-year-old girl and caused her to touch his penis through his pants— came to the attention of the police after the child's mother reported what the child had told her. Specifically, when the child's mother asked her what she thought of defendant, who recently had begun dating the mother, the child replied, "I don't know about him, mommy. * * * [T]he other day when you were in the shower, he tickled my potty and made me touch his."

The child's mother contacted the police. Grants Pass Police Detective Pierce interviewed the child, who identified defendant as the person who had touched her. The child repeated for Pierce that the touching had occurred when her mother was in the shower. She also shared that it had happened one other time earlier that day, before a rafting trip that she had gone on with her mother and defendant. Pierce followed up her interview of the child with a recorded interview of defendant. Pierce also enlisted the assistance of Detective Lidey, who subsequently interrogated defendant twice regarding the sexual abuse allegations. Lidey recorded both interrogations.

The second interrogation by Lidey is the basis of defendant's second and third assignments of error. The trial court allowed the state to play a 45-minute recording of that interrogation for the jury, mostly over defendant's objection. Throughout the interrogation, defendant maintained that he had not touched the child's vagina with sexual intent, and that any touching that might have occurred would have been incidental to their nonsexual interactions, such as play-wrestling or defendant carrying the child on his shoulders while shopping with her mother.

Early in that interview, Lidey told defendant that he could "read body language." Throughout the interview, Lidey repeatedly told defendant that he could tell from his body language that he was "holding something back" and that he was not being entirely truthful. Lidey also commented on specific aspects of defendant's body language, which he told defendant were indications that he was lying. Lidey said that whenever he asked defendant whether he had touched the child "inappropriately," defendant would "look[] down to the right," and that, in Lidey's experience, that eye movement typically told him that someone was lying.

Defendant objected to the jury hearing any more of the interrogation immediately after it heard Lidey's claim that he could "read body language." Defendant argued that that assertion was an impermissible comment on defendant's credibility, or, in the words of the trial court, "reverse vouching."[1] The court overruled defendant's objection. It reasoned that the general prohibition against witnesses commenting on the credibility of other witnesses did not apply to out-of-court statements such as Lidey's. The trial court distinguished in-court "vouching" from what it viewed Lidey to have done, which was merely "doing [his] job" by challenging defendant's truthfulness to get him to change his story.[2]

After the state played the balance of the interview for the jury, defendant moved for a mistrial. He again argued that Lidey's recorded statements should have been excluded as impermissible comments on defendant's credibility and cited *State v. McQuisten*, 97 Or App 517, 520, 776 P2d 1304 (1989) (holding that trial court erred in not excluding, *sua sponte*, officer's recorded statement implying that the officer believed the complaining witness). Defendant further argued that no curative instruction could mitigate the highly prejudicial effect of improperly allowing the jury

---

[1] The term "reverse vouching" does not appear in any appellate decision in this state. From the context in which the trial court used the term, however, we understand the court and defendant to have been evoking the substantial body of case law regarding the admissibility of adverse comments on the credibility of a suspect or other witness. *See, e.g., State v. Lupoli*, 348 Or 346, 357, 234 P3d 117 (2010).

[2] The trial court based its ruling on *State v. Odoms*, 104 Or App 658, 661, 803 P2d 739 (1990), *rev'd on other grounds*, 313 Or 76, 829 P2d 690 (1992).

to hear those inadmissible comments. Notably, defendant's argument that the recording was incurably prejudicial was premised on his view that it was presumptively inadmissible; he did not argue that, to the extent it might be admissible, any probative value that it might otherwise have would be substantially outweighed by the danger of unfair prejudice. *See* OEC 403.

The trial court denied defendant's motion for mistrial. After defendant testified, however, the trial court directed the jury to disregard any comments made by Lidey regarding defendant's credibility. The trial court first gave that jury instruction orally, highlighting those specific comments that the jury should ignore:

> "You're instructed that any comments made by Detective Lidey about the credibility of a witness is, as an example, you heard that when Detective Lidey was interviewing the defendant, at times he would say, 'I'm looking at your body language and I'm, I think that you're holding back,' something like that, must not be considered by you for the proposition that the witness is either telling the truth or not telling the truth. Rather, you are to consider as evidence, only the defendant's response to the questioning in the context of the entire interrogation with Detective Lidey."

The court's written instruction on that point reinforced those directions:

> "You are instructed that any comments made by Detective Lidey about the credibility of any witness must not be considered by you for the proposition that the witness is telling the truth or not. Rather, you are to consider as evidence only the defendant's responses to the questioning in the context of the entire interrogation with Detective Lidey."

Before addressing the merits of defendant's second and third assignments, we dispense with a preliminary matter. That is, defendant urges us on remand to revisit his first assignment of error that the underwear evidence should have been excluded, this time to evaluate the adequacy of the trial court's OEC 403 balancing regarding that evidence. Defendant did not initially brief those arguments to this court because, in his words, before *Williams II*, "[f]rom a legal and tactical standpoint, OEC 403 was a non-issue." We allowed supplemental briefing on that issue

after *Williams II* at defendant's request. However, for the reasons that follow, we now decline to consider that issue further.

As noted, the Supreme Court concluded in *Williams II* that the underwear evidence was admissible under OEC 404(4) as evidence of defendant's intent. 357 Or at 15, 24. The court also concluded that, at least when offered to show propensity in a prosecution for child sexual abuse, other acts evidence is subject to OEC 403 balancing. *Id.* at 20; *see State v. Brumbach*, 273 Or App 552, 561, 359 P3d 490 (2015) (so stating). According to defendant, the Supreme Court's holding that OEC 403 balancing is required in cases such as his changed the legal landscape by abrogating previously controlling authority holding that OEC 403 balancing typically is *not* required. *See, e.g., State v. Dunn*, 160 Or App 422, 430, 981 P2d 809 (1999), *rev den*, 332 Or 632 (2001) ("OEC 404(4) makes [other acts evidence] admissible without balancing under OEC 403 *unless the state or federal constitution requires that balancing.*" (Emphasis added.)). Before the court's decision in *Williams II*, defendant argues, there was no reason to challenge the balancing that occurred, because balancing was simply not an issue. Defendant further notes that, because the issue at trial was whether the evidence was admissible under OEC 404(3), as opposed to OEC 404(4), the requirement or adequacy of any balancing of OEC 404(4) evidence was never at issue in this appeal. But now, prompted by the Supreme Court's ruling that OEC 403 balancing is required, defendant seeks to challenge the balancing that occurred.

Whatever his reasons may have been for not raising this issue before, it is not an appropriate issue for us to consider now. The Supreme Court unequivocally held in *Williams II* that "the trial court did not err in admitting the underwear evidence." 357 Or at 24. The court declined to review the adequacy of the trial court's OEC 403 analysis because defendant had not raised that issue on review. *Id.* at 23. Ultimately, the court specifically instructed us to consider the "remaining assignments of error" on remand. *Id.* at 24. While defendant did petition for reconsideration and asked that the Supreme Court modify its disposition by directing us to address the OEC 403 issue on remand, the

court denied that request. Thus, to revisit the first assignment of error would exceed the scope of this remand. *Cf. State v. Custer*, 146 Or App 487, 492-94, 934 P2d 455 (1997) (where Court of Appeals held that evidence should have been suppressed and remanded with instructions to suppress, trial court erred by revisiting suppression motion; defendant's proper avenue for relief was to have sought reconsideration by the Court of Appeals). In accordance with the Supreme Court's specific instructions regarding remand, we do not reach defendant's OEC 403 argument regarding the underwear evidence here.

We now turn to defendant's second and third assignments of error. As noted, defendant argues that the trial court should have excluded his audiotaped interrogation from evidence because Lidey's comments on his credibility were impermissible vouching. Based on that premise, he argues that the court should have declared a mistrial after the prosecutor played the audiotape, because Lidey's comments suggesting that defendant was not credible were highly prejudicial. In defendant's view, Lidey's comments must have influenced how the jury viewed his denials during the interrogation, as well as his testimony at trial. He argues that the audiotape necessarily affected the verdict, because the trial was little more than a "swearing match" between the victim and him, such that his credibility was at the heart of his case. Among other arguments, the state responds that any perceived error in admitting the audiotape was harmless, because the trial court ultimately directed the jury not to consider Lidey's comments for the purpose of determining defendant's credibility. We agree with the state on that point. Thus, for the reasons that follow, we reject defendant's second and third assignments of error.

We presume that jurors follow their instructions, "absent an overwhelming probability that they would have been unable to do so." *State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990). We do not see that overwhelming probability on this record. A defendant's "bare assertion" that a jury would not be able to follow an instruction does not establish an overwhelming probability that the jury could not follow it, particularly when the trial court tailors the instruction to the specific error alleged. *State v. Garrison*, 266 Or App 749,

757, 340 P3d 49 (2014), *rev den*, 356 Or 837 (2015). Here, the trial court specifically instructed the jury to *ignore* Lidey's statements about defendant's body language when evaluating defendant's credibility. *See B. A. v. Webb*, 253 Or App 1, 12, 289 P3d 300 (2012), *rev den*, 353 Or 428 (2013) (if vouching occurs, trial court is "obligated *sua sponte*, to exclude and, if necessary, strike testimony that comments on a witness's credibility"). And, the assertion itself, that Lidey could "read body language," was not the type of assertion that we have found so compelling that a jury would be unable to independently evaluate the evidence, especially in light of the trial court's instruction to disregard Lidey's statement. *Cf. McQuisten*, 97 Or App at 520 (admitting interrogating officer's opinion that witness was telling the truth was reversible error where witness's credibility was principal issue and trial court took *no* curative action). Therefore, we assume that the jury followed the instruction and made its own independent evaluation of defendant's credibility. As a result, even if the trial court should not have admitted Lidey's comments on defendant's credibility, that ruling was unlikely to have affected the verdict. Any error, therefore, was harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (evidentiary error is harmless if there is "little likelihood that the particular error affected the verdict"); *see also* OEC 103(1) ("Evidential error is not presumed to be prejudicial.").

For much the same reason, the trial court did not err in denying defendant's motion for mistrial. We review the denial of a motion for mistrial for an abuse of discretion. *State v. Thompson*, 328 Or 248, 271, 971 P2d 879 (1999). "A trial court abuses its discretion if its decision is outside the range of legally permissible choices, * * * or exceeds the bounds of reason[.]" *Garrison*, 266 Or App at 756 (citations omitted). In the context of a motion for mistrial, a "trial court's choice not to declare a mistrial but, instead, to give a cautionary instruction, falls within the permissible range of choices committed to the court's discretion" unless the instruction was insufficient to cure the problem as a matter of law. *State v. Wright*, 323 Or 8, 19, 913 P2d 321 (1996). As we have just concluded, the trial court's instruction that the jury disregard Lidey's comments was not insufficient

as a matter of law. Therefore, the trial court did not abuse its discretion in denying defendant's motion and, instead, instructing the jury as it did.

Affirmed.