No. 884          December 11, 2024          637

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NATHAN OXFORD,
aka Nathan Daniel Oxford,
*Defendant-Appellant.*

Multnomah County Circuit Court
140230856; A178818

Andrew M. Lavin, Judge.

Argued and submitted October 30, 2024.

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and DeVore, Senior Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction for two counts of first-degree sodomy, ORS 163.405 (Counts A and B[1]), for his conduct against a child, G. As against a different child, A, he was also charged with, but not convicted of, five counts of second degree-sodomy, ORS 163.395 (Counts C through G), and five counts first-degree sexual abuse, ORS 163.427 (Counts H through L).

On appeal, defendant raises five assignments of error. Having considered his arguments and the record, we conclude that defendant has not identified any reversible error. Consequently, we affirm.

*First Assignment of Error.* In his first assignment of error, defendant contends that "the trial court erred when it admitted evidence of defendant's sexual fantasies." In particular, defendant contends that the trial court erred in admitting propensity evidence that defendant told G and A's mother (1) that he "has a sexual interest in children, and that he knows that it's wrong, but he nevertheless has that interest," and (2) that he "has fantasies about taking his daughter's virginity and having sex with her."

The trial court admitted that propensity evidence for the limited purpose of proving that, with regard to charges of first-degree sexual abuse relating to A, defendant's contact with A was made with a "sexual purpose." Consistent with the propensity evidence being admitted only for that limited purpose, the trial court provided the jury with a lengthy and detailed limiting instruction three times over the course of the trial: first, as part of its preliminary instructions to the jury; second, shortly before the propensity evidence was admitted; and third, as part of the instructions that the jury received before it began deliberating. The jury was also provided with a written copy of the instruction for its deliberations.

_____

[1] At trial, the parties and the court referred to the counts in the indictment by letter rather than number. For ease of reference, we also adopt that convention.

We note that Counts "A" and "B" correspond to Counts 1 and 2 in the indictment, and Counts "C" through "L" correspond with Counts 7 through 16 in the indictment.

In a prior trial, defendant was acquitted of Counts 3 through 6.

In the instruction regarding its use of the propensity evidence, the jury was instructed, among other points, that it "may not use th[at] evidence in any way when deciding whether the State has proved beyond a reasonable doubt that the Defendant is guilty of first-degree sodomy as alleged in counts A and B, or second-degree sodomy, as alleged in counts C, D, E, F, and G"; that the propensity evidence may not be used "to determine that because the Defendant may have engaged in those other instances of sexual behavior, he is guilty of either first-degree or second-degree sodomy"; and that the only purpose that the propensity evidence could be used for is to determine whether "Defendant acted with the purpose of arousing or gratifying the sexual desire of himself or the other individual alleged in the count with respect to first-degree sexual abuse."

In full, the jury instruction given during the preliminary instructions, which was, in sum and substance, the same instruction provided to the jury two other times during trial and provided to the jury in written form, stated:

"During the course of this trial, you will likely hear testimony regarding instances of the Defendant's sexual behavior that goes beyond the behavior that the State has alleged in each of the counts in this case. That evidence, of other sexual behavior, is admissible for only a limited purpose. So I must explain to you how you can consider that evidence and how you cannot.

"And I'll just let you know, as I go through this instruction, I'm going to give you this instruction twice more. So if you don't absorb it all immediately, you will have it in written form in the final jury instructions when you deliberate, and I am going to give the instruction to you a few more times at the appropriate parts of the trial.

"First, when you deliberate at the end of this trial, you must decide whether any of the instances of sexual behavior occurred. If you conclude that any of the instances occurred, you can take the evidence of those instances into consideration in determining whether the State has proven—proved—beyond a reasonable doubt only one particular element of first-degree sexual abuse as alleged in counts H, I, J, K, and L.

"In order to prove the Defendant's guilt on any of those counts, the State must prove, among other things, that the Defendant subjected the individual alleged in the count, to sexual contact. To prove that sexual contact occurred, the State must prove that the Defendant engaged in the alleged contact with the purpose of arousing or gratifying the sexual desire of either party to the contact.

"*The only purpose for which you may consider the evidence of other instances of the Defendant's sexual behavior, is to determine whether it demonstrates that the Defendant acted with the purpose of arousing or gratifying the sexual desire of himself or the other individual alleged in the count with respect to first-degree sexual abuse as alleged in counts H, I, J, K, and L.* You may not use the evidence for any other purpose.

"For example, you may not use the evidence for the purpose of concluding that simply because the Defendant may have engaged in those other instances of sexual behavior, he is guilty of the counts of first-degree sexual abuse alleged in counts H, I, J, K, and L. In other words, the evidence of the other instances of sexual behavior is not by itself sufficient to prove the offenses alleged in those counts.

"The State must still prove each of the other elements of first-degree sexual abuse beyond a reasonable doubt, and you may not use the evidence of the other instances of the Defendant's sexual behavior when deciding whether the State has proved those other elements.

"You also may not use the evidence of the other instances for any other purpose. *You may not use the evidence in any way when deciding whether the State has proved beyond a reasonable doubt that the Defendant is guilty of first-degree sodomy as alleged in counts A and B, or second-degree sodomy, as alleged in counts C, D, E, F, and G.* For example, *you may not use the evidence to determine that because the Defendant may have engaged in those other instances of sexual behavior, he is guilty of either first-degree or second-degree sodomy.* You also may not consider the other evidence for the purpose of concluding that the Defendant should be convicted because he is a bad person."

(Emphases added.)

On appeal, defendant argues that the trial court should have excluded the propensity evidence because,

among other reasons, "[e]vidence that defendant wanted to take his biological daughter's virginity is not similar to allegations that he committed sexual abuse of a boy"[2]; "it is hard to imagine more inflammatory character evidence than an accusation that defendant wanted to commit incest against his adolescent daughter"; and "[n]o juror could partition their mind and sequester their consideration of that evidence so that it only applied to some counts, but not others." Defendant also contends that the "trial court's admission of the evidence was not harmless and it deprived defendant of his [federal] due-process right to a fair trial."

The state responds that defendant did not preserve his due-process argument and that "the trial court properly admitted the disputed other acts evidence." The state also argues that any error in admitting the evidence was harmless "because the jury only convicted defendant of the charges for which the jury was instructed that the evidence was not relevant," *i.e.*, first-degree sodomy.

We agree with the state that any error was harmless. Two legal points lead us to that conclusion: First, we presume that jurors follow their instructions "absent an overwhelming probability that they would have been unable to do so." *State v. Williams*, 276 Or App 688, 695, 368 P3d 459, *rev den*, 360 Or 423 (2016) (internal quotation marks omitted); *see Greer v. Miller*, 483 US 756, 766 n 8, 107 S Ct 3102, 97 L Ed 2d 618 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." (Internal citation and quotation marks omitted.)). "A defendant's 'bare assertion' that a jury would not be able to follow an instruction does not establish an overwhelming probability that the jury could not follow it, particularly when the trial court tailors the instruction to the specific error alleged." *State v. Shinnick*, 288 Or App 847, 849, 407 P3d 877 (2017), *rev den*, 407 P3d 877 (2018).

---

[2] Both G and A are male.

And second, even with regard to "potentially inflammatory" propensity evidence, a limiting instruction can operate to adequately "address[]" the inflammatory nature of such evidence. *State v. Terry*, 309 Or App 459, 465, 482 P3d 105 (2021). That is true even in prosecutions for sex crimes when the propensity evidence is evidence of a defendant's prior deviant sexual conduct. *Id.* at 461, 465 (holding that, in trial for two counts of first-degree sexual abuse, "potentially inflammatory" propensity evidence including evidence that defendant had a prior conviction for one count of attempted unlawful sexual penetration of a 10-year-old relative of defendant and defendant's statement "admitting his attraction to 10- to 13-year-old girls," "could be addressed through a limiting instruction"); *see also, e.g.*, *State v. Harris*, 303 Or App 464, 467-68, 461 P3d 1080*, rev dismissed*, 367 Or 291 (2020) (collecting cases where "circumstances" that carried a "risk of prejudice," including circumstances arising in the prosecution of sex crimes, could be "appropriately addressed with a curative instruction"). In this case, defendant was not convicted of the charges for which the jury was specifically instructed that it could consider the propensity evidence: the charges of first-degree sexual abuse against A. Instead, defendant was only convicted of charges for which the jury was specifically instructed that it was not to consider the propensity evidence: the charges of first-degree sodomy against G. The jury was so instructed on three separate occasions during defendant's trial, and it had a copy of that instruction during its deliberations.

On this record, we conclude that any error was harmless, because we presume that the jury followed the trial court's detailed and repeated instruction regarding the proper use of the propensity evidence, notwithstanding the potentially inflammatory nature that evidence. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) ("Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?"); *State v. Brumbach*, 273 Or App 552, 564, 359 P3d 490 (2015), *rev den*, 359 Or 525 (2016) ("A federal constitutional error is harmless, such that the conviction will be upheld, if the reviewing court may confidently say, on the whole record, that the constitutional error was

harmless beyond a reasonable doubt." (Internal quotation marks omitted.)).[3]

*Second and Third Assignments of Error.* In his second assignment of error, defendant contends that the trial court erred when it "allowed" a "professional CARES interviewer" to describe G's and A's allegations concerning defendant's conduct as "disclosures" during her testimony. In his third assignment of error, defendant contends that the trial court erred when it denied his motion to strike that testimony.

In defendant's view, the trial court erred because the CARES interviewer's description of G's and A's allegations as "disclosures * * * amounted to vouching." In advancing that argument, he also notes that during her testimony the CARES interviewer noted her attempt to "honor [G's] resistance [to disclosure], and honor his need to be wherever he was in the process of his disclosure," and her effort "to maintain his integrity and the integrity of his disclosure process."

Further, defendant acknowledges that the trial court denied his motion to strike, both on the merits and because it was untimely, but contends that his arguments were nonetheless preserved because "preservation is a question for the appellate court." He requests plain error review in the event we conclude that the vouching issue raised in his second and third assignments of error is not preserved.

The state responds that trial court "correctly denied defendant's motion to strike and did not err in permitting [the CARES interviewer] to use the term disclosure to describe the victims' allegations of abuse[,] because by using the term, she did not convey that the [victims'] statements were truthful." Moreover, the state contends that defendant's challenge to the CARES interviewer's use of the

---

[3] In reaching our conclusion, we assume, without deciding, that defendant preserved his federal due-process argument.

Additionally, in reaching our conclusion, we note defendant does not assert that the prosecutor relied on the propensity evidence in arguing that the jury should convict him of the charges against G, *i.e.*, those charges for which he was ultimately convicted. *Cf. Terry*, 309 Or App at 462 (error in admitting certain propensity evidence not harmless where, among other facts, the prosecutor relied on that propensity evidence in urging the jury to convict the defendant for a crime for which he was ultimately convicted).

term "disclosure" was untimely and, therefore, defendant did not preserve the issue raised in his second and third assignments of error.

As an initial matter, we reject defendant's contention that the trial court erred in denying defendant's motion as untimely and, therefore, we conclude that defendant did not preserve his argument for appeal. Defendant did not raise a contemporaneous objection to the CARES interviewer's use of the word "disclosure." Instead, after the CARES interviewer provided testimony during the state's direct examination of her, defendant prepared and filed a written motion asking the court to strike all of her "testimony regarding G[ ]," noting that she "constantly referred to the statements" made by G as "disclosures" during her testimony.

The trial court determined that that motion was untimely because, if a contemporaneous objection had been made, then the court could have been "much more surgical with [its] ruling," and, "rather than striking all of [the CARES interviewer's] testimony as it relates to [G,]" it could have "ask[ed] the jury to disregard, perhaps just one, maybe two, maybe three instances of the use of the word disclosure and then instruct the witness to take a different route with describing that portion of her involvement in this case."[4] We can discern no error in the trial court's denial of defendant's motion to strike all of the CARES interviewer's testimony regarding G as untimely, given that the timing of defendant's motion placed the court in a "worse position to be able to address" the issue that defendant identified (*i.e.*, the CARES interviewer's use of the word "disclosure") than if defendant had raised a contemporaneous objection to the CARES interviewer's testimony. *State v. Quebrado*, 372 Or 301, 315, 549 P3d 524 (2024) (noting that the trial court and the parties in the trial court were in the "best position to evaluate whether taking up the issue on Tuesday morning, as opposed to Thursday afternoon, placed the court in a worse position to be able to address the error").

---

[4] The trial court also explained that it had indicated to the parties prior to defendant's motion to strike that if the parties "have a legal issue with any of the testimony, they are to raise an objection *** contemporaneous with the problematic testimony" and that that was not done here.

In advancing his timeliness argument, defendant argues that this case is like *Quebrado*, where the court held that a motion for mistrial was timely notwithstanding that that motion was not made when it first could have been made. Defendant argues that here, "as in *Quebardo* there were no intervening trial actions or trial developments between the disputed event *** and his motion to strike." Defendant's reliance on *Quebrado* is misplaced, because the trial court in this case, unlike the trial court in *Quebrado*, ruled that defendant's motion was untimely and explained why defendant's failure to raise a contemporaneous objection "placed the court in a worse position to be able to address the error." *Id.* at 315; *cf. id.* (in evaluating whether a mistrial motion was untimely, even "more important[]" than the fact that there was no "significant event *** in the trial" between when a mistrial motion could have been made and when it was made, was that "neither the state nor the trial court expressed any concerns about timeliness or prejudice").

Consequently, we conclude that defendant did not preserve his vouching arguments for appeal.

Having determined that defendant did not preserve his vouching arguments, we turn to the question of whether the trial court plainly erred. "An error is plain when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences." *Dept. of Human Services v. M. D. D.*, 323 Or App 442, 443, 523 P3d 1152 (2022). The question here is whether it is obvious and not reasonably in dispute that the term "disclosure," in the context in which it was used, constituted impermissible vouching.

Based on our review of the record, and in view of defendant's arguments, we conclude that it is not obvious that, in the context in which the term was used, the CARES interviewer's use of the word "disclosure" constituted impermissible vouching. *See State v. Solano*, 332 Or App 646, 655, 551 P3d 938, *review allowed*, 372 Or 763 (2024) ("[A] 'disclosure' may refer to the disclosure of information that may ultimately be true or false. *** Thus, a witness who uses the term 'disclosure' does not necessarily vouch for the

credibility of an accuser who makes a disclosure that they have been abused.'").

*Fourth Assignment of Error.* In his fourth assignment of error, defendant contends that the trial court erred when it denied defendant's motion for a mistrial, which defendant made after the state asked defendant an impermissible question about his prior convictions during cross-examination.

Defendant testified at his trial, and during direct examination, defense counsel elicited testimony reflecting that defendant had previously served time in prison as a result of causing a "bad traffic accident" while he was driving under the influence of intoxicants and that, shortly after his release from prison, he was arrested for purchasing a firearm, which defendant described during his testimony "a felony possession."

Near the beginning of the state's cross-examination, the state asked defendant "isn't it true that you were convicted of felon in possession of a firearm, unlawful possession of a destructive device, and unlawful manufacturing of a destructive device, all felonies?"[5] Defense counsel objected to that question before defendant answered and, out of the presence of the jury, he explained to the trial court that defendant had been convicted of those crimes, but the convictions were reversed on appeal, and that they had been dismissed "not less than two weeks ago." Defendant then moved for a mistrial.

The trial court denied the motion for a mistrial and instead immediately instructed the jury upon its return that it was to "disregard the last question that was asked by [the state] in its entirety," that it was "not to speculate why the question was asked [or] what the answer might have been," and that "the question is not to be commented on in any way during your deliberations." Additionally, before the jury deliberated, the trial court instructed the jury:

---

[5] We note that, prior to that question, the prosecutor had elicited testimony from defendant, without objection, that defendant had also been convicted of unlawful use of a weapon.

"If you find that the Defendant has been previously convicted of a crime, you may consider this conviction only for its bearing, if any, on the credibility of the Defendant. Specifically, you may not use this evidence for the purpose of drawing the inference that because the Defendant was convicted of a previous crime, the Defendant may be guilty of the crime charged in this case. Aside from the previous convictions about which the Defendant has expressly testified, you may not speculate as to whether the Defendant has any other criminal convictions. *For example, you may not consider any unanswered questions that may have been asked about other criminal conduct. Such questions are not evidence and you are instructed to disregard them and not to speculate as to the answers to any such questions.*"

(Emphasis added.)

"We review a trial court's decision whether to order a mistrial for abuse of discretion[,] *** mindful that granting a motion for a mistrial is a drastic remedy to be avoided if possible." *Harris*, 303 Or App at 466 (internal citation and quotation marks omitted). Further, "recognizing that the trial court is in the best position to assess the effect of the complained-of incident and to determine the means necessary to correct it, we will only reverse a denial of a motion for mistrial if the defendant was denied a fair trial." *Id.* at 466-67 (internal quotation marks and brackets omitted).

Having reviewed the record and the parties' arguments, we conclude that the trial court acted within its discretion to deny defendant's motion for mistrial and instead provide the jury with curative instructions. *See State v. Bowen*, 340 Or 487, 510-11, 135 P3d 272, *cert den*, 549 US 1214 (2006) (curative instruction to disregard testimony was sufficient to address prejudice when the defendant was on trial for murder, and the prosecutor elicited testimony from the defendant that he had a prior conviction for manslaughter); *State v. Woodall*, 259 Or App 67, 77, 313 P3d 298 (2013) (in sex abuse trial, curative instruction coupled with other facts sufficient to mitigate certain jurors learning that defendant was a registered sex offender).[6]

---

[6] In reaching our conclusion that the trial court did not err in denying defendant's motion for a mistrial, we note that the trial court found that the state asked the impermissible question "inadvertent[ly]" and that the prosecutor "was unaware of the recent dismissal" of the charges. Defense counsel also noted

*Fifth Assignment of Error.* In his fifth assignment of error, defendant contends that "the trial court erred when it excluded [his expert's] testimony about the Abel [Assessment of Sexual Interest (Abel assessment)]." During trial, defendant wanted to present expert testimony under OEC 702 that the results of his Abel Assessment "suggested that defendant did not have significant [attraction] to elementary school age children" and did "not show attraction to males of any age." The trial court excluded that testimony after determining that defendant did not provide an adequate foundation for the admissibility of the Abel assessment as scientific evidence under *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), and *State v. O'Key*, 321 Or 285, 899 P2d 663 (1995).

Reviewing for legal error, *State v. Hilding*, 320 Or App 487, 506, 514 P3d 79 (2022), we conclude that the trial court did not err.

For scientific testimony to be admissible, "the proponent of the evidence must demonstrate that an expert's scientific testimony is based on scientifically valid principles and is pertinent to the issue to which it is directed." *Id.* (internal quotation marks omitted). "The *Brown* and *O'Key* factors help a trial court determine whether the proffered scientific testimony meets that threshold." *Id.*

Although we have considered all of the applicable *Brown* and *O'Key* factors, for the purposes of our analysis here, it suffices to make a few observations upon which we conclude that the trial court did not err. First, defendant's expert testified that he did not know "the current error rate" of the Abel assessment, though he had seen "preliminary studies" from 1994 for which "the error rate was 25 percent." Defendant's expert's inability to testify as to the current error rate of the scientific evidence that defendant sought to introduce weighs against admissibility. *O'Key*, 321 Or at 304

---

that he did not believe the improper question was "advertent." *See Woodall*, 259 Or App at 75 ("A mistrial is most likely to be required when a prosecutor intentionally and repeatedly makes comments that suggest a defendant has a history of committing similar crimes. *** At the other end of the spectrum are cases in which a prejudicial statement is made *inadvertently, only once, and in passing.*" (Emphasis added.)).

(the "known or potential rate of error" is a factor in determining the admissibility).

Second, the basis for defendant's expert's opinion as to whether defendant was attracted to elementary school age children and males was defendant's score on the Abel assessment. But the algorithm that is used to determine that score was unknown to defendant's expert; that is because the algorithm that is used to determine an individual's score on the Abel assessment is "proprietary information." Other courts have noted—and we agree—that that fact creates an impediment to any attempt to replicate or verify the validity of the Abel assessment. *See, e.g.*, *United States v. Birdsbill*, 243 F Supp 2d 1128, 1133-34 (D Mont 2003) ("[T]here is a fundamental problem in any attempt to replicate or verify the validity of the [Abel assessment] because the formula used by Dr. Abel is proprietary information"); *see also In re CDK*, 64 SW 3d 679, 683-84 (Tex App 2002) ("For all we know, [the formulas used for computing a score on the Abel assessment] and their components could be mathematically based, founded upon indisputable empirical research, or simply the magic of young Harry Potters' mixing potions at the Hogwarts School of Witchcraft and Wizardry."). Further, because defendant's expert was unaware of how defendant's score on the Abel assessment was calculated, he could not explain the scientific process that was used to arrive at his opinion regarding defendant's attraction to various demographic groups.[7] *See Hilding*, 320 Or App at 508 (expert testimony diagnosing victim with "temporary bone fragility" inadmissible where, among other facts, the "testimony lacked an explanation of the scientific basis for the diagnosis itself or the process used to arrive at it"). That too weighs against admissibility. *O'Key*, 321 Or at 304 (whether the "theory or technique in question can be (and has been tested)" is a factor in determining admissibility (internal quotation marks omitted)).

Finally, when defendant's expert was asked whether he was aware of any "peer-reviewed publications or studies

---

[7] We note that defendant's expert knew what information was collected when defendant was tested under the Abel assessment methodology, but he did not know how that information was used by the Abel Institute to calculate defendant's score on the Abel assessment.

on the Abel assessment," he testified that, the day before, he went "back on the Abel [web]site, and they have listed 29 different studies that were used to develop and then validate the Abel assessment." But the trial court found that defendant's expert "did not have any details about what those studies conclude" and "whether or not there are studies out there that are contrary to those studies that the Abel company has posted on its website." The defendant's expert's inability to provide meaningful testimony as to whether the Abel assessment had "been subject to peer review and publication" weighs against admissibility. *O'Key*, 321 Or at 304 ("Peer review and publication provide the opportunity for others in the field to examine and critique the reasoning or methodology behind scientific theory.").

Thus, we conclude that the trial court did not err in excluding defendant's expert's testimony that the results of defendant's Abel Assessment "suggested that defendant did not have significant [attraction] to elementary school age children" and did "not show attraction to males of any age."[8]

Affirmed.

---

[8] We also observe that "[t]he vast majority of courts that have considered the admissibility of Abel test results have concluded that such results are not sufficiently reliable to be admitted in the guilt phase of a criminal trial." *State v. Victor O.*, 301 Conn 163, 175-76, 20 A3d 669 (2011) (collecting cases).