228 June 12, 2024 No. 400

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIA MARIE GRAHAM,
aka Tia Marie Sandberg,
*Defendant-Appellant.*

Coos County Circuit Court
22CR09793; A180085

Martin E. Stone, Judge.

Submitted April 24, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emma McDermott, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Affirmed.

## AOYAGI, P. J.

Defendant was convicted of felony fourth-degree assault, ORS 163.160(3), and harassment, ORS 166.065(3), based on an incident in which she assaulted a woman who had accidentally struck defendant's family dog with her car. On appeal, defendant raises two unpreserved claims of error. She contends that she did not receive a fair trial as a result of the prosecutor (1) stating in closing argument that defendant "never said she blacked out," and (2) making statements in rebuttal closing argument regarding the state's decision not to call defendant's children to testify. On plain-error review, we conclude that those statements did not deny defendant a fair trial and, accordingly, affirm.

The relevant facts are minimal. A woman accidentally hit defendant's family dog with her car, in front of defendant's house. The woman stopped and got out of her car, intending to notify the dog's owners. She saw two children in the yard, who seemed upset. Defendant came charging toward the woman and, before the woman could say more than a few words, began punching the woman in the face and threatened to kill her. Eventually, a man intervened to stop the assault. When the police arrived, defendant was apologetic for her behavior, including making comments to the officer about "'seeing red' or something to the effect of 'losing control.'"

Defendant was charged with fourth-degree assault and harassment. At trial, the defense did not dispute that defendant had assaulted the victim, only whether the state had proved that defendant's two children witnessed the assault. Fourth-degree assault is normally a Class A misdemeanor, ORS 163.160(2), but, as relevant here, becomes a Class C felony if it "is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim," ORS 163.160(3)(a). The trial evidence included circumstantial evidence that the children witnessed the assault, but no direct evidence. The victim did not see the children leave the yard but also did not look for them during the assault, and the children themselves were not called to testify.

The jury found defendant guilty on both charges, including finding that defendant's children witnessed the assault. On appeal, defendant raises two unpreserved claims of error, asserting that she was denied a fair trial as a result of certain statements made by the prosecutor during closing argument, to which she did not object at trial.

"Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to review for "plain" errors. ORAP 5.45(1). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). It is a matter of discretion whether we will correct a plain error. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006).

In the specific context of prosecutorial misconduct in closing argument, for an error to be "plain," it must be "beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial." *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022) (internal quotation marks omitted). Moreover, "a defendant asserting plain error must demonstrate that the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial." *Id.* "In other words, prosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial." *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023) (emphasis in original). "That is important because, '[g]enerally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct.'" *State v. Babcock*, 327 Or App 358, 360, 535 P3d 345 (2023) (quoting *State v. Davis*, 345 Or 551, 583, 201 P3d 185 (2008), *cert den*, 558 US 873 (2009)).

Here, defendant challenges two separate aspects of the prosecutor's closing arguments. Defendant's first assignment of error pertains to the italicized statement below from

the prosecutor's main closing argument, wherein the prosecutor addressed the state's need to prove that defendant punched the victim intentionally:

> "So let's talk about intentional contact. Did she mean to do it on purpose, to come up and hit her in the face multiple times? * * *

> "You don't have to think about things days in advance or even minutes in advance. You can make a decision instantly.

> "And the state would agree that probably [defendant] was not intending to do this earlier that day. She may not have even known that that's what she was going to do as she walked into the yard.

> "She talked about being emotional. She told—I believe Trooper Evans testified that she said something about 'seeing red,' that she had just essentially lost it.

> "And we talked at the beginning of the day too about emotions and are we still responsible for our actions when we're emotional, and you all said, 'Yes.'

> "Now, I want to point out that she said she 'saw red.' *She never claimed she didn't—that she blacked out*, that she didn't remember what happened, that it wasn't her, that she was out of control.

> "Instead, she said it was wrong. It was a poor reaction. She overreacted. So I would say that even though she may have been acting on her emotions, it doesn't mean she's not acting intentionally."

(Emphasis added.)

Defendant argues that the above-italicized statement denied her a fair trial, because it referred to facts not in evidence, as well as being an improper comment on defendant's right to remain silent and not testify and undermining the presumption of innocence. We are unpersuaded. During a hearing three months before trial, defense counsel told the court that defendant had described herself to him as having "blacked out" during the incident. It is certainly possible that that remark was what put the term "blacked out" in the prosecutor's mind. But it does not follow that any use of those words at trial amounted to referring to facts

not in evidence. In context, the jury would have understood the prosecutor to be emphasizing what defendant told the police officer about her emotional state—that she "saw red," *not* that she blacked out, didn't remember what happened, didn't do it, or was out of control—as relevant to whether defendant "intentionally" punched the victim. The statement was not improper, or at least not plainly so. It also was not a comment on defendant's right to remain silent and did not undermine the presumption of innocence. We therefore reject the first assignment of error.

In her second assignment of error, defendant challenges statements by the prosecutor in rebuttal closing argument regarding the state's decision not to call defendant's children to testify. Those statements were made in response to defendant's closing argument, so, for context, we begin with defendant's closing argument.

Defendant's closing argument focused almost entirely on whether the state had proved that the children witnessed the assault—which, as mentioned, was the only real dispute at trial. Defendant argued that the state had not proved that the children were present, that the more reasonable inference from the circumstantial evidence was that they were not present, and that the jury should therefore find defendant guilty of misdemeanor fourth-degree assault instead of felony fourth-degree assault. In that context, defendant pointed out that the state had not even interviewed the children:

> "And I would also point out to you that [as] we've already discussed previously, the state has the burden of proving each and every element of this case beyond a reasonable doubt.
>
> "And as [the prosecutor] pointed out to you and discuss[ed] with you when the questioning was going on, the state has vast resources at [its] fingertips.
>
> "And so *instead of using those resources and questioning the children or questioning the other individuals who were present about whether the children were there and actually witnessed or perceived of the incident, they chose simply to rely on [the victim's] testimony,* and she wasn't sure.
>
> "* * * * *

"The state has the burden of proof, as I said, *could have interviewed other potential witnesses to include the children, chose not to do that.*"

(Emphases added.)

The prosecutor then gave her rebuttal closing argument. Most of the rebuttal consisted of the prosecutor pointing to specific circumstantial evidence that the children witnessed the assault. Toward the end of rebuttal, the prosecutor responded to defendant's criticism of the state for not interviewing the children:

"Now, the state could have called these children and have them come in and testify, *** a 7-year-old and a 12-year-old. We could have had them come in and relive a traumatic day and testify against their mom.

"But the state is not required to present all available evidence or to investigate every possible avenue. They are required to [present] enough evidence to prove beyond a reasonable doubt that the charges occurred. In this case, we've done that without having to bring them in and re-traumatize them."

The prosecutor then changed subjects and wrapped up her rebuttal.

Defendant argues that the above-quoted statements were improper because they "invited jurors to speculate about evidence not in the record," amounted to "an inflammatory emotional appeal," and "suggested that defendant's exercise of her right to trial was tantamount to 're-traumatizing her children.'" We are again unpersuaded.

Viewed in isolation, and without the context of defendant's closing argument, the prosecutor's statements could be improper. It would be absolutely improper for the prosecution not to call child witnesses to testify in a criminal case, then convey or suggest to the jury in closing argument that the state had interviewed the children, determined that they had witnessed the alleged crime and been traumatized by it, and therefore decided not to call them to testify to avoid re-traumatizing them. That would be absolutely improper even if it was true, because the prosecutor would essentially be testifying on behalf of the absent

children, and even more improper if it was untrue, such as if the children had denied witnessing anything when interviewed and showed no signs of trauma. Either way, it would be prosecutorial misconduct.

But that is not the case here. If anyone, it was defendant who brought up facts not in evidence, when she told the jury that the state had not even interviewed the children. Defendant asserted that the state never questioned the children, had made a choice to rely solely on the victim's testimony, and could have interviewed the children but "chose not to do that." In that context, the prosecutor's response would not have been understood as conveying information about out-of-court interviews of the children. Instead, it would have been understood only as explaining why the state chose not to involve two relatively young children in a criminal prosecution of their mother by interviewing them or calling them to testify—regardless of what they might say—especially when the state did not feel that it was necessary to meet its burden of proof. It also bears noting that it was undisputed that the children witnessed their dog being struck by a car and were upset, so the prosecutor's reference to it being "a traumatic day" for them to relive did not depend on the children having witnessed the assault.

The prosecutor's statements in rebuttal were not improper, in the context of defendant's own closing argument. The prosecutor did not invite the jury to speculate as to what the children would have testified; to the contrary, she basically affirmed that the state had no idea what they would say. The prosecutor did not make an "inflammatory emotional appeal" in explaining why the state did not call the children. And the prosecutor never suggested that defendant was re-traumatizing the children by exercising her right to trial. Neither party called the children to testify, so the children were necessarily not re-traumatized by the trial, nor is it plausible that the jury would have understood the prosecutor's statements as a comment on the defendant's right to trial. We reject defendant's second assignment of error.

Affirmed.