522 April 22, 2026 No. 306

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD DWIGHT LEE,
aka Ronald D. Lee,
*Defendant-Appellant.*

Union County Circuit Court
19CR12391, 18CN03522; A179851 (Control), A179426

Thomas B. Powers, Judge.

Submitted November 25, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Rond Chananudech, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.*

ORTEGA, P. J.

Affirmed.

---------------
\* Lagesen, C. J., *vice* Mooney, S. J.

**ORTEGA, P. J.**

Defendant appeals from a judgment of conviction for second-degree murder, raising four assignments of error. First, he challenges the trial court's denial of his motion for a mistrial after a witness testified that defendant was a "bullshit artist" who "lied a lot." In his second and third assignments of error, defendant argues that the trial court plainly erred in failing to declare a mistrial based on statements that the prosecutor made in closing and rebuttal argument. In his fourth assignment, defendant argues that the trial court erred when it denied his request for Uniform Criminal Jury Instruction (UCrJI) 1030, the less-satisfactory-evidence instruction.

As we will explain, we conclude that the trial court did not err in denying defendant's motion for a mistrial because the trial court's curative actions sufficiently remedied any prejudice caused by the witness's comment on defendant's credibility, and we further conclude that the prosecutor's statements in closing and rebuttal did not constitute reversible plain error. We reject defendant's fourth claim of error without further discussion because his arguments are foreclosed by *State v. Wildeboer*, 338 Or App 404, 417-18, 566 P3d 1149, *rev allowed*, 374 Or 188 (2025), which held that UCrJI 1030 was not a correct statement of the law. *See State v. McNally*, 361 Or 314, 320, 392 P3d 721 (2017) ("A criminal defendant is entitled to have the jury instructed in accordance with his or her theory of the case if the instruction correctly states the law and there is evidence to support giving it."). Therefore, we affirm.

We begin with a brief summary of the facts and procedural history for context and discuss additional facts and procedural history as relevant to our resolution of each assignment of error. After defendant and L had been married for almost 20 years, defendant wanted a divorce and moved out of their shared house. L obtained a restraining order against defendant prohibiting him from being or staying within 150 feet of L or the house after defendant stomped on L's foot during an argument.

The following year, L called 9-1-1 in the middle of the night because she saw someone in her backyard who she

suspected was defendant. While on the phone with the 9-1-1 operator, L said, "I'm hit. [Defendant] stop," and "I've been shot. I'm bleeding." By the time police arrived, L was dead from gunshot wounds to her shoulder and head. Police later arrested defendant for L's murder and the state indicted him on one count of second-degree murder.

At trial, defense counsel argued that defendant's friend, Hamilton, murdered L. Defendant testified that he and Hamilton had a sexual relationship, and that Hamilton was afraid that L would discover their relationship. The jury found defendant guilty.

## MOTION FOR MISTRIAL

In defendant's first assignment of error, he argues that the trial court erred when it denied his motion for mistrial after a witness testified that defendant was a "bullshit artist" who "lied a lot." We review a trial court's denial of a motion for mistrial for abuse of discretion. *State v. Soprych*, 318 Or App 306, 307, 507 P3d 276 (2022). A trial court abuses its discretion in denying a motion for mistrial if the effect of the improper statements or conduct denies the defendant a fair trial. *Id.*

A witness for the state, Williams, testified that defendant had talked about "getting rid of [L]" and had asked Williams to buy a gun and walkie talkies. The prosecutor asked Williams if he "ever [thought] to go to the police?" Williams replied, "I'd thought about it. But just knowing [defendant's] kind of a bullshit artist." Defendant objected, arguing that the witness was improperly commenting on defendant's credibility. The trial court sustained the objection and told the jury to "disregard the answer that was provided." The prosecutor then asked Williams, "[w]ithout telling us anything about his character, can you tell us why you didn't go to the police?" Williams answered, "[o]ther things that he's said didn't add up. He lied a lot. He'd make up things." The trial court and prosecutor interrupted the witness, defendant said he had a matter for the court, and the court asked the jurors to leave the courtroom.

Defendant moved for a mistrial, arguing that when a witness comments on the credibility of another witness,

it is grounds for a mistrial. The state argued that a mistrial was not required because a curative instruction would remedy any prejudice. Defendant responded that a curative instruction would be insufficient because "there's no unringing the bell." After discussion with the parties, the court asked for briefing on the issue and adjourned the proceeding for the day.

The next morning, the trial court denied defendant's motion, concluding that Williams's statements were impermissible vouching but that the prejudice was curable through a proper instruction because the statements were "isolated and made in passing;" did not involve a comment about defendant invoking a constitutional right in a way that implied guilt; and were "not particularly prejudicial" because they could support an inference that when defendant said "that he might have had a plan and a motive for the alleged murder of his wife" he was merely being "blustery and bullshitty."

The court brought the jury in, told them that it was sustaining defendant's objection to Williams's testimony, and instructed them that

"the members of the jury, you all, are the only people deciding the facts of this case. That includes, among other things, you, the jurors, alone are supposed to decide whether someone is truthful or not, or whether they're credible or not. That is why other witnesses are not allowed to offer their own opinion about whether someone else is truthful or not truthful. Mr. Williams testified yesterday about his opinions as to [defendant's] truthfulness. That testimony is not permitted. His testimony is therefore stricken on that matter and you are to disregard it and it should not be considered or commented on in any way during your deliberations."

At the close of the evidentiary phase of the trial and before closing arguments, the court further instructed the jury that:

"It is your sole responsibility to make all the decisions about the facts in the case. You must evaluate the evidence to determine how reliable or how believable that evidence is. *** When I have sustained objections to evidence, or

ordered that evidence be stricken or excluded from your consideration, you must follow these rulings. Do not consider such matters during your deliberations."

On appeal, defendant challenges the trial court's denial of his motion for a mistrial, renewing his argument that he was denied a fair trial because Williams's testimony was improper vouching and the trial court's curative instruction was not sufficient to remedy the prejudice caused by the testimony.[1]

"'Vouching' refers to the expression of one's personal opinion about the credibility of a witness." *State v. Johnson*, 329 Or App 728, 733, 542 P3d 506 (2023), *rev den*, 372 Or 560 (2024). "Because credibility determinations are the exclusive province of the jury, witnesses are categorically prohibited from expressing a view on whether another witness is telling the truth." *Davis v. Cain*, 304 Or App 356, 363, 467 P3d 816 (2020) (internal quotation marks omitted). When a witness improperly vouches, the trial court has discretion to address the situation in any manner that comes within the range of legally permissible choices; striking the offending testimony and giving curative instructions are permissible choices unless they are "insufficient to cure the problem as a matter of law." *Johnson*, 329 Or App at 733 (internal quotation marks omitted). "We presume that jurors follow their instructions, absent an overwhelming probability that they would have been unable to do so." *State v. Williams*, 276 Or App 688, 695, 368 P3d 459, *rev den*, 360 Or 423 (2016) (internal quotation marks omitted). "A defendant's bare assertion that a jury would not be able to follow an instruction does not establish an overwhelming probability that the jury could not follow it, particularly when the trial court tailors the instruction to the specific error alleged." *Id.* (internal quotation marks omitted).

At the outset, the parties do not dispute that Williams's testimony that defendant was a "bullshit artist"

---

[1] In support of his argument, defendant contends for the first time on appeal that, because the trial court did not immediately strike Williams's second statement before informing the jury that it was adjourning for the day due to "pending legal issues," the testimony was particularly prejudicial because it "received far more attention than an errant statement said in passing." We agree with the state that defendant did not preserve that argument, and thus we do not address it. ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *.").

who "lied a lot" was improper vouching. However, we note that the state may have elicited that testimony for the purpose of explaining why the witness did not call the police and not to establish that defendant is not credible. However, as framed by the parties, the only question before us is whether the trial court adequately addressed the situation by striking the improper testimony and giving a curative instruction or, conversely, whether it was required to declare a mistrial.

Here, the trial court's actions included evaluating the prejudicial effect of the improper testimony based on case-specific circumstances; striking the testimony; issuing a specifically-tailored curative instruction that directed the jury to disregard Williams's comments on defendant's credibility; and giving a final instruction reiterating that the jury has the sole responsibility to make credibility determinations and must not consider testimony that had been stricken. We conclude that those actions adequately remedied the prejudice caused by the vouching testimony. *See Johnson*, 329 Or App 734-35 (where a detective testified that the complainant was credible, the trial court adequately addressed the situation by considering case-specific circumstances, striking the testimony, giving a "clear and specific" curative instruction close in time to the vouching, and giving a final instruction reiterating the jury's singular role in assessing credibility); *Williams*, 276 Or App at 695-96 (where the jury heard a recording of an officer telling the defendant during an interview that the officer could read body language and knew that the defendant was not being truthful, the trial court's specific curative instruction directing the jury to disregard the officer's comments on the defendant's credibility was sufficient to remedy prejudice such that a mistrial was not required).

Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

## PROSECUTOR'S STATEMENTS

In defendant's second and third assignments of error, he argues that the prosecutor made improper statements during closing and rebuttal argument that denied him a fair trial. Defendant did not object to the statements

when they were made, so he asks us to review for plain error. *See State v. Graham*, 333 Or App 228, 230, 551 P3d 998, *rev den*, 372 Or 787 (2024) (explaining that generally an issue not preserved in the trial court will not be considered on appeal; however, under ORAP 5.45(1), we have discretion to review for plain errors); *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (stating requirements for an error to be "plain").

For a prosecutor's statements in closing argument to rise to the level of plain error, it must be "beyond dispute" that they "were so prejudicial as to have denied defendant a fair trial." *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022) (internal quotation marks omitted). To meet that standard, the statements, individually or collectively, must have been both obviously improper *and* incurable. *State v. Perez*, 373 Or 591, 606, 568 P3d 940 (2025).

Here, during closing argument, the prosecutor argued that defendant was not credible. She referenced conflicting statements that defendant had made about L's injury to her foot, as well as video that contradicted defendant's assertion that he did not go onto L's property. The prosecutor told the jury, "You saw a \*\*\* video where [defendant's] clearly on the property. He was lying when he said that. \*\*\* It's simply not credible that [defendant] never stopped or that he was checking on the property."

Then, after defendant argued that Hamilton murdered L in an effort to conceal his sexual relationship with defendant, the prosecutor noted in rebuttal that Hamilton categorically denied the sexual relationship when he testified. The prosecutor told the jury that "[t]he only evidence that you have ever heard in this trial about a sexual relationship between Mr. Hamilton and [defendant] came from [defendant] himself and I submit to you that it was not credible." The prosecutor continued, "We can't even count the number of things that [defendant] said that were inconsistent yesterday. And I submit to you that includes this fabricated relationship with Mr. Hamilton."

Defendant now challenges the prosecutor's statements during closing that defendant "was lying" and that

his testimony was "not credible," along with the prosecutor's statements during rebuttal that defendant's testimony about his sexual relationship with Hamilton was "not credible" and was "fabricated." In defendant's view, those statements deprived him of a fair trial because they amounted to impermissible vouching by the prosecutor. *See State v. Sperou*, 365 Or 121, 129, 442 P3d 581 (2019) (holding that lawyers are "prohibited from giving their personal opinions on the credibility of witnesses").

Viewing those statements in context, we conclude that they were not improper because they were not prosecutorial vouching but rather were made as part of an argument that defendant was not credible based on the evidence before the jury. In making that argument, the prosecutor referenced evidence that contradicted defendant's testimony, along with evidence that defendant had made inconsistent statements. In those circumstances, the prosecutor's statements were not improper because they were "grounded in the evidence in the record." *State v. Slay*, 331 Or App 398, 403-05, 545 P3d 768, *rev den*, 372 Or 560 (2024) (explaining that pointing to inconsistencies in the evidence, "as well as to statements that d[o] not make logical sense, to argue why the factfinder should doubt defendant's credibility *** is exactly what a prosecutor is supposed to do").

Affirmed.