No. 553 June 17, 2026 641

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KAREN V. KAYNE,
*Defendant-Appellant.*

Josephine County Circuit Court
22CR13236; A181113

Brandon S. Thueson, Judge.

Argued and submitted April 3, 2025, Central Catholic High School, Portland.

Peter G. Klym, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Reversed and remanded.

## PAGÁN, J.

Defendant appeals from a judgment of conviction for two counts of maintaining a dangerous dog, ORS 609.098. Defendant argues, among other things, that the trial court erred in convicting defendant without applying the requisite mental state of criminal negligence. We conclude that the trial court plainly erred in convicting defendant without finding that she acted with criminal negligence, and we exercise our discretion to correct the error.[1] Accordingly, we reverse and remand.

For context, we begin with an overview of the elements that the state must prove to convict a person of maintaining a dangerous dog. We then summarize the facts and procedural history, including the parties' arguments and the trial court's speaking verdict, as relevant to the issues of preservation and plain error, before proceeding to our analysis.

### ORS 609.098(2)

Under ORS 609.098(2), "[a] person commits the crime of maintaining a dangerous dog if the person is the keeper of a dog and the person, with criminal negligence, fails to prevent the dog from engaging in an act described in subsection (1) of this section." As relevant here, ORS 609.098 (1)(b) provides that a "dangerous dog" means a dog that "[a]cts as a potentially dangerous dog," defined under ORS 609.035 (8)(c) as a dog that "[w]ithout provocation and while not on premises from which the keeper may lawfully exclude others, inflicts physical injury on or kills livestock or a domestic animal," after having previously committed an act as a potentially dangerous dog that resulted in the keeper being found to have violated ORS 609.095(1)(g) (dog as a public

---

[1] In light of that conclusion, we do not address defendant's remaining assignments of error, in which she argues that the trial court erred in (1) applying an incorrect legal standard in finding that defendant was guilty of maintaining dangerous dogs because the incident "began" on public property and then continued on defendant's property; and (2) imposing restitution without a hearing or stipulation. We decline to address the first claim of error, which is unpreserved, because we cannot say with confidence that it will arise on remand; and should it arise on remand, the parties will have an opportunity to address it before the trial court in the first instance. As to defendant's challenge to the imposition of restitution, we note that the state concedes that it was error; however, our disposition obviates the need to address it.

nuisance).[2] In sum, to convict a defendant of maintaining a dangerous dog, as relevant here, the state must prove that the person is the keeper of a dog that has previously injured or killed another domestic animal, and that the person, with criminal negligence, failed to prevent the dog from inflicting injury on or killing a domestic animal without provocation, while not on property from which the keeper may lawfully exclude others.[3]

## FACTS AND PROCEDURAL HISTORY

The state charged defendant with two counts of maintaining a dangerous dog after an incident involving defendant's two dogs, Moki and Gyptian, and a dog owned by another person, Gaul, named Baby Girl. Defendant, who appeared *pro se*, waived a jury and proceeded to a bench trial. At trial, the state argued in its opening statement that the evidence would show that defendant had previously been convicted of maintaining two dogs—Moki and Gyptian—as a nuisance, and that the two dogs broke through defendant's fence and pulled Baby Girl into defendant's yard. In her opening statement, defendant argued that the evidence would show that Baby Girl bit her small dog, Zorro, through the fence, that Gyptian and Moki had been provoked when Zorro yelped, and that Baby Girl was "stuck in [her] broken fence" on her private property when Moki and Gyptian grabbed her.

Gaul testified that he was walking Baby Girl on a public path past defendant's house, on the outside of a picket fence that surrounded defendant's yard. Gaul saw a small barking dog, Zorro, in defendant's front yard. Baby Girl did not bark at Zorro or try to push her nose through the fence. As they walked by, two large dogs, Moki and Gyptian, broke through a "makeshift" barrier on defendant's porch, charged towards the picket fence, and broke a board off of the fence. One of the dogs reached through the broken fence,

---

[2] After defendant was convicted, the legislature amended ORS 609.035. Or Laws 2025, ch 170, § 1. That amendment is not relevant to our analysis, and, accordingly, we cite to the current version of the statute.

[3] Criminal negligence means that "a person fails to be aware of a substantial and unjustifiable risk that [a specified] result will occur or that [a specified] circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10).

grabbed Baby Girl, and dragged her through the fence into defendant's yard, where both dogs "started mauling her" until Gaul went into the yard and defendant came out of her house to intervene. Another witness, Shoesmith, testified that she was driving past defendant's house and saw defendant's two dogs break the fence and pull Baby Girl into the yard, and that Baby Girl did not "initiate the physical altercation." The state presented photos of injuries on Baby Girl's chest, back, and underarm, as well as photos of the fence where a board had been replaced in the location where Gaul and Shoesmith testified that the dogs had broken through.[4]

Defendant called her neighbor, McCrery, as a witness, who testified that as Gaul and Baby Girl were walking by the fence, Baby Girl was barking and nipping at Zorro through the fence. McCrery testified that Baby Girl pushed her head through the fence and bit Zorro, and that Moki and Gyptian grabbed Baby Girl's head when it was sticking through the fence and pulled her farther into the yard. Defendant also offered photos of a small, decorative fence in her yard that had been knocked over and argued that the direction that the small fence was knocked over rebutted the state's theory that her dogs charged at and broke the larger fence.

In closing argument, the state argued that defendant should be found guilty because her dogs "caused physical injury to a domestic animal without provocation and on a location where [defendant] has no lawful right to exclude another." The state pointed to Gaul and Shoesmith's testimony that defendant's dogs charged at the fence, broke a fence board, grabbed Baby Girl, dragged her into defendant's yard, and attacked her, causing injuries. The state also argued that McCrery's testimony was not credible, and that Baby Girl did not provoke the dogs by barking at or biting Zorro and that she was dragged from public property onto defendant's property.

In her closing argument, defendant argued that Baby Girl provoked her dogs by nipping at Zorro through

---

[4] The state also presented evidence that defendant had previously been convicted of two counts of maintaining a potentially dangerous dog as a public nuisance after Moki and Gyptian attacked another dog at a campground.

the fence and that Baby Girl "somehow * * * got through the boards and was a sitting duck on [defendant's] private property." Defendant argued that "for the first time in three years" her "big dogs" got the gate open on her porch to "go save * * * Zorro" and that she "reacted as quickly as possible."

Before announcing its verdict, the trial court explained that "[t]he state bears the burden of proving each and every issue, or element, beyond a reasonable doubt." The court said that certain elements were not in dispute, including that defendant is a keeper of Moki and Gyptian; there is a previous conviction for those dogs as a public nuisance; and that the two dogs inflicted physical injury on Baby Girl. The court stated that what was in dispute was whether there was provocation by Baby Girl and whether the "incident occurred or began * * * on premises from which defendant could lawfully exclude others." The court found defendant guilty of two counts of maintaining a dangerous dog after finding that Gaul and Shoesmith's testimony was credible, that "the area in which this began were premises that * * * defendant could not lawfully exclude others," and that Moki and Gyptian were not provoked.

## ANALYSIS

On appeal, defendant argues that the trial court erred in convicting her without finding that she acted with criminal negligence, as required by ORS 609.098(2). Defendant contends that that claim of error is preserved but asks us, in the alternative, to correct the error as plain error. *See State v. Graham*, 333 Or App 228, 230, 551 P3d 998, *rev den*, 372 Or 787 (2024) (explaining that generally an issue not preserved in the trial court will not be considered on appeal; however, under ORAP 5.45(1), we have discretion to review for plain errors). The state responds that defendant's argument is unpreserved and that it does not meet the requirements for plain error review because it is not apparent on the record that the trial court omitted the element of criminal negligence when it found defendant guilty. *See State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (an error is plain when it is "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences").

Beginning with preservation, defendant argues that statements she made during closing argument, including that her dogs got her gate on the porch open for the first time in three years; that she reacted as "quickly as possible"; that there was an "interior fence that was knocked over"; and that the exterior fence was broken "were relevant only to the issue of whether defendant had a culpable mental state." In defendant's view, her arguments can be interpreted as asking the court to find that she was not criminally negligent in maintaining her dogs. We disagree.

As defendant acknowledges, she did not explicitly make any argument on the issue of criminal negligence or ask the trial court to make a finding on the applicable mental state. And to the extent that defendant argued that her dogs had not broken through the porch barrier in three years and that she reacted quickly, that evidence was never presented to the trial court in testimony or otherwise, and her brief reference to those issues was not "used in a way and context in which the other parties and the court would understand *** from that single reference the essential contours of the full argument." *State v. Haynes*, 352 Or 321, 335, 284 P3d 473 (2012).

As to defendant's discussion of the fences, throughout the trial she referred to the fences not in the context of her mental state but rather related to the issue of whether her dogs broke the fence and grabbed Baby Girl outside the fence. In those circumstances, even if we were to interpret the rules regarding preservation of error "liberally," defendant's statements during closing argument did not provide the trial court with an explanation of her objection that was "specific enough to ensure that the court [could] identify its alleged error with enough clarity to permit it to consider and correct the error immediately." *State v. Balfour*, 311 Or 434, 453, 814 P2d 1069 (1991) (the "rules regarding preservation of error *** might be interpreted liberally if a person had proceeded *pro se* at trial"); *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (explaining what a party must do to preserve a claim of error).

Because defendant's argument is unpreserved, we must determine if it meets the requirements for plain

error. The parties do not dispute that whether the trial court applied the applicable elements of a criminal offense is a question of law, and that the legal point that a fact-finder must find a defendant criminally negligent under ORS 609.098(2) is obvious and not reasonably in dispute. *See State v. McKinney/Shiffer*, 369 Or 325, 333, 505 P3d 946 (2022) (whether the trial court failed to apply culpable mental state of criminal negligence to physical injury element of assault was a question of law); ORS 609.098(2) (a person is guilty of maintaining a dangerous dog if they act "with criminal negligence"). Thus, the question before us is whether the error is apparent on the record without requiring us to choose among competing inferences.

The state argues that the trial court is not required to explain its verdict and that the court's silence with respect to the criminal negligence element gives rise to competing inferences on the record—either the trial court failed to consider the element or the trial court found that defendant acted with the requisite mental state and failed to say so out loud. In our view, the inference that the state suggests—that the trial court considered the mental state element but merely failed to discuss it in its speaking verdict—is not plausible on this record. *See State v. Lovern*, 234 Or App 502, 512, 228 P3d 688 (2010) (for plain error analysis, competing inferences must be plausible). As defendant points out, the trial court walked through each element in its speaking verdict except for the criminal negligence element; the state did not make any argument in opening or closing on the issue of criminal negligence; and the state did not explicitly present any evidence on that issue or discuss any of the evidence in the context of how it related to the issue. In those circumstances, the only plausible inference apparent on the record is that the trial court failed to consider whether defendant was criminally negligent, and the trial court's error was plain.

Having determined that the trial court plainly erred, the next question is whether the error was harmless, as we cannot reverse a judgment based on harmless error. *State v. Ortiz*, 372 Or 658, 671, 554 P3d 796 (2024) ("Under Article VII (Amended), section 3, of the Oregon Constitution,

an appellate court may not reverse a criminal defendant's conviction based on an error—whether preserved or unpreserved—that is harmless."). An error is harmless if there is "little likelihood" that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

Here, some of the evidence in the record that could plausibly relate to the issue of criminal negligence weighed in favor of the state, including the size of the dogs, defendant's awareness that the dogs had previously attacked another dog, and that the dogs were outside while defendant was in the house. However, there was also evidence that would weigh in favor of a finding that defendant was not criminally negligent, including pictures of the exterior fence and testimony that the dogs were contained on the porch behind a "makeshift" barrier. In light of that evidence and the absence of any argument before the trial court on the issue of criminal negligence, there is at least some possibility that the trial court may not have found defendant criminally negligent had it considered that element, and thus we conclude that the error was not harmless. *See State v. Stone*, 324 Or App 688, 695, 527 P3d 800 (2023) (In the mental-state context, in assessing whether an error was harmless, the pertinent inquiry is "whether there is some likelihood that the [factfinder] might *not* have been persuaded that [the defendant] had the requisite mental state, had it considered that issue." (Emphasis in original.)).

Finally, because we conclude that the trial court's error is both plain and not harmless, we must decide whether to exercise our discretion to correct it. *Ortiz*, 372 Or at 672. Based on the gravity of the error, the competing interests of the parties, and the interests of justice, we conclude that the trial court's error in finding defendant guilty without having found that she was criminally negligent—an element of the offense that the state was required to prove beyond a reasonable doubt—warrants the exercise of our discretion to correct the error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (outlining nonexclusive list of factors that are relevant in deciding whether to exercise our discretion to correct a plain error).

Reversed and remanded.